# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

PUBLIC EMPLOYEES FOR                )
ENVIRONMENTAL RESPONSBILITY,        )
<u>et al.</u>,                      )
                                    )
            Plaintiffs,             )
                                    )
        v.                          )          Civil Action No. 10-1067 (RBW) (DAR)
                                    )
DR. WALTER CRUICKSHANK, <u>et al.</u>,  )      Consolidated with:
                                    )
            Defendants,             )          Civil Action No. 10-1073
                                    )          Civil Action No. 10-1079
CAPE WIND ASSOCIATES, LLC,          )          Civil Action No. 10-1238
                                    )
            Intervenor.             )
_____     )
                                    )
ALLIANCE TO PROTECT                 )
NANTUCKET SOUND, <u>et al.</u>,     )
                                    )
            Plaintiffs,             )
                                    )
        v.                          )
                                    )
DAVID BERNHARDT,[1] <u>et al.</u>,  )
                                    )
            Defendants,             )
                                    )
CAPE WIND ASSOCIATES, LLC,          )
                                    )
            Intervenor.             )
_____     )
                                    )
TOWN OF BARNSTABLE,                 )
MASSACHUSETTS,                      )
                                    )
            Plaintiff,              )
                                    )
        v.                          )
                                    )

_____

[1] Individuals sued in their official capacities have been substituted as the proper party defendants pursuant to Federal Rule of Civil Procedure 25(d).

DAVID BERNHARDT, <u>et al.</u>,                    )
                                                    )
        Defendants,                                 )
                                                    )
CAPE WIND ASSOCIATES, LLC,                          )
                                                    )
        Intervenor.                                 )
_____)
                                                    )
THE WAMPANOAG TRIBE OF GAY                          )
HEAD (AQUINNAH)                                     )
                                                    )
        Plaintiff,                                  )
                                                    )
    v.                                              )
                                                    )
DR. WALTER CRUICKSHANK, <u>et al.</u>,              )
                                                    )
        Defendants,                                 )
                                                    )
CAPE WIND ASSOCIATES, LLC,                          )
                                                    )
        Intervenor.                                 )
_____)

<u>**MEMORANDUM OPINION**</u>

This consolidated case comprises four sets of interrelated claims concerning several administrative decisions made by federal agencies approving the construction of various aspects of an offshore wind energy project in Nantucket Sound (the "Cape Wind project"). Currently pending before the Court is plaintiffs Public Employees for Environmental Responsibility ("PEER") and Alliance to Protect Nantucket Sound's (the "Alliance") (collectively, the "plaintiffs") Motion for an Award of Attorneys' Fees and Costs by Plaintiffs Public Employees for Environmental Responsibility and Alliance to Protect Nantucket Sound ("Pls.' Mot."). Upon

careful consideration of the parties' submissions, [2] the Court concludes for the following reasons that it must grant in part and deny in part the plaintiffs' motion for attorneys' fees.

## I.     BACKGROUND

The Court has previously set forth the factual background of this case, see Pub. Emps. for Envtl. Responsibility v. Beaudreau, 25 F. Supp. 3d 67, 85–93 (D.D.C. 2014) (Walton, J.), and therefore will not recite it again here.  The Court will, however, briefly summarize the procedural posture of this case relevant to the claims on which the plaintiffs seek attorneys' fees, which is pertinent to the resolution of the pending motion.

### A.     Case Background

The plaintiffs, and others, brought this civil action ("Civil Action No. 10-1067"), against Walter Cruickshank, the Director of the United States Bureau of Ocean Energy Management ("BOEM"); David Bernhardt, the Secretary of the United States Department of the Interior (the "Department of the Interior"); Aurelia Skipwith, the Director of the United States Fish and Wildlife Service ("FWS"); Wilbur Ross, the Secretary of the United States Department of Commerce; Chris Oliver, the Assistant Administrator of the National Marine Fisheries Service ("NMFS"); and Lieutenant General Todd T. Semonite, the United States Army Chief of Engineers and Commanding General of the United States Army Corps of Engineers (the "Corps

---

[2] In addition to the documents already identified, the Court considered the following submissions in rendering its decision: (1) the Second Amended Complaint for Declaratory and Injunctive Relief ("Pls.' Compl." or the "Complaint"); (2) the First Amended Complaint for Declaratory and Injunctive Relief ("Alliance Compl."); (3) the PEER Plaintiffs' Supplemental Complaint ("Pls.' Supp. Compl." or the Supplemental Complaint"); (4) the Federal Defendants' Notice of Completion of Remands ("1st Remand Not."); (5) the Federal Defendants' Notice of Completion of U.S. Fish & Wildlife Service Remand ("2d Remand Not."); (6) the Federal Defendants' Notice of Completion of Bureau of Ocean Energy Management Remand ("3d Remand Not."); (7) Plaintiffs Public Employees for Environmental Responsibility's and Alliance to Protect Nantucket Sound's Joint Memorandum Supporting Their Entitlement to Attorneys' Fees and Costs ("Pls.' Mem."); (8) the Federal Defendants' Response in Opposition to Plaintiffs' Motion for Attorneys' Fees ("Fed. Defs.' Opp'n"); and (9) the Joint Reply Memorandum in Support of Plaintiffs Public Employees for Environmental Responsibility and Alliance to Protect Nantucket Sound's Entitlement to Attorneys' Fees and Expenses ("Pls.' Reply").

of Engineers"),[3] alleging violations of the Administrative Procedure Act ("APA"), 5 U.S.C.

§§ 701–706 (2018); the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–1544 (2018); the

Migratory Bird Treaty Act, 16 U.S.C. § 70; and the National Environmental Policy Act

("NEPA"), 42 U.S.C. §§ 4321–4370h (2018). See Pls.' Compl. ¶¶ 1, 97–111. The Alliance, and

others, separately brought a civil action ("Civil Action No. 10-1079") against Director

Cruickshank; the Bureau of Ocean Energy Management ("BOEM"); Secretary Bernhardt; the

Department of the Interior; Lieutenant General Semonite; Admiral Karl L. Schulz, the

Commandment of the United States Coast Guard (the "Coast Guard");[4] and the Coast Guard,[5]

alleging violations of the APA; the NEPA; the Energy Policy Act of 2005, Pub. L. No. 109-58,

§ 388(a), 119 Stat. 594, 744–46 (codified at 43 U.S.C. § 1337(p) (2018)) (amending the Shelf

Lands Act); the Coast Guard and Maritime Transportation Act of 2006, Pub. L. No. 109-241,

120 Stat. 516; the National Historic Preservation Act (the "Preservation Act"), 16 U.S.C. § 470f;

the Clean Water Act, 33 U.S.C. § 1344 (2018); and the Rivers and Harbors Act, 33 U.S.C. § 403

(2018). See Alliance Compl. ¶¶ 1, 151–93.

The Court consolidated Civil Action No. 10-1067, Civil Action No. 10-1079, and two

other related cases, Civil Action Nos. 10-1073 and 10-1238, on October 25, 2010. See Min.

Order (Oct. 25, 2010). The parties subsequently cross-moved for summary judgment,[6] and on

---

[3] Civil Action No. 10-1067 was brought against the predecessors of the individuals listed. The individuals sued in their official capacities have been substituted as the proper party defendants pursuant to Federal Rule of Civil Procedure 25(d).

[4] Civil Action No. 10-1079 was brought against the predecessors of the individuals listed. The individuals sued in their official capacities have been substituted as the proper party defendants pursuant to Federal Rule of Civil Procedure 25(d).

[5] The Court will collectively refer to all of the defendants in Civil Action Nos. 10-1067 and 10-1079 as the "federal defendants."

[6] Due to the convoluted procedural history in this matter over the course of a nine-year period, the Court will address the specific procedural history as to each of the claims on which the plaintiffs seek attorneys' fees in further detail below. See Part I.B, infra.

March 14, 2014, the Court granted partial summary judgment to the plaintiffs and remanded

certain claims to the appropriate agencies (the "initial remand"). After the initial remand

proceedings were completed on July 2, 2014, see 1st Remand Not. at 1, the plaintiffs filed their

Supplemental Complaint alleging new claims regarding inadequacies in the initial remand

proceedings (the "supplemental claims"). The parties again cross-moved for summary judgment,

and, on November 18, 2014, the Court granted summary judgment to the federal defendants on

the plaintiffs' Supplemental Complaint, see Order at 6 (Nov. 18, 2014), ECF No. 415. The

plaintiffs then appealed that decision to the District of Columbia Circuit, resulting in the

Circuit's partial reversal of this Court's judgment with respect to two of the plaintiffs' claims and

remand of the case to this Court. See Pub. Emps. for Envtl. Responsibility v. Hopper, 827 F.3d

1077, 1090 (D.C. Cir. 2016). In response to the Circuit's decision, the Court again remanded

certain claims to the applicable agency (the "second remand"). See Order at 2–3 (Oct. 27, 2016),

ECF No. 431. After the second remand proceedings were completed, the Court ordered that

"this case shall be dismissed with prejudice upon the resolution of the plaintiffs' two previously

filed motions for attorneys' fees and costs," Order at 2 (Nov. 2, 2017), ECF No. 446

(capitalization removed), and instructed that the attorneys' fees briefing should "address[] only

the threshold questions regarding the plaintiffs' entitlement to attorneys' fees and litigation

expenses [under the citizen-suit provision of the ESA and the Equal Access to Justice Act

('EAJA')], reserving any arguments pertaining to the reasonableness of the amounts requested

for future briefing, if necessary," Order at 3 (Mar. 22, 2018), ECF No. 451. In accordance with

the Court's Order, the plaintiffs submitted their joint motion for attorneys' fees, see generally

Pls.' Mot., which is the subject of this Memorandum Opinion.

**B.     The Claims on Which the Plaintiffs Seek Attorneys' Fees**

**1.     The Plaintiffs' ESA Claims Against the FWS**

On March 14, 2014, the Court "grant[ed] summary judgment to the[] plaintiffs on their claims that the FWS violated the ESA by failing to make an independent determination regarding whether the feathering operational adjustment was a reasonable and prudent measure" (the "first ESA claim against the FWS") and "remanded [the claim] to the FWS for it to issue reasonable and prudent measures in accordance with this Court's Memorandum Opinion."  Order at 2 (Mar. 14, 2014), ECF No. 370 (capitalization removed).  On remand, the FWS issued an amended incidental take statement[7] "provid[ing] [its] independent evaluation," and concluding that "[t]he final [reasonable and prudent measures] have not changed as a result of [its] analysis on remand."  1st Remand Not., Exhibit ("Ex.") 5 (Letter from Paul R. Phifer, Assistant Regional Director, Ecological Services, FWS, to Michelle Morin, Chief, Environmental Branch for Renewable Energy, Environmental Division, BOEM (June 27, 2014) ("1st Phifer Ltr.")) at 2.

After the FWS completed its initial remand proceedings, the plaintiffs filed their Supplemental Complaint, alleging, inter alia, that the amended incidental take statement completed by the FWS on remand did not comply with the ESA because it failed to consider an economic report submitted by the plaintiffs (the "second ESA claim against the FWS").  Pls.' Supp. Compl. ¶ 19.  The Court dismissed the plaintiffs' second ESA claim against the FWS on the ground that "the plaintiffs admit[ted] that the Court ha[d] previously considered and rejected th[is] claim[]."  Order at 6 (Nov. 18, 2014), ECF No. 415.  The Court thereafter entered a final

---

[7] "An [incidental take statement] is an estimate by the [FWS] of the 'take' of a threatened or endangered species that is likely to result from an action by a federal agency.  'Take' means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to engage in any such conduct.  [Incidental take statements] are produced by the [FWS] as part of a biological opinion resulting from consultations with federal agencies under section 7 of the [ESA]."  ESA Implementation | Incidental Take Statements, U.S. Fish & Wildlife Serv., https://www.fws.gov/endangered/improving_ESA/ITS.html (last visited Nov. 27, 2019).

Judgment on December 15, 2014, see generally Judgment (Dec. 15, 2014), and the plaintiffs appealed.  On appeal, the Circuit "reverse[d] th[is] [ ] Court's judgment . . . that the [FWS's] [initial remand actions] complied with the [ESA]," concluding that the FWS's failure to consider the scientific and economic data submitted by the plaintiffs during the FWS's initial remand proceedings in 2014, when it did consider its own economist's 2014 analysis on remand, was error, because by relying on its economist's 2014 analysis, "the [FWS] reopened the record and was required to consider [the] plaintiffs' submissions."  Pub. Emps. for Envtl. Responsibility, 827 F.3d at 1090.  In response to the Circuit's decision, this Court remanded the FWS's amended incidental take statement "to the FWS to take appropriate actions consistent with the Circuit's opinion."  Order at 1 (Oct. 27, 2016), ECF No. 431.

In response to this second remand, the FWS issued a second amended incidental take statement stating that the FWS's "further independent examination of the best scientific and commercial data available, as well as the various submissions received, [ ] confirmed [its] prior conclusion that the originally proposed feathering measure . . . is not a reasonable and prudent measure[] . . . necessary or appropriate to minimize the anticipated incidental takes."  2d Remand Not., Ex. 1 (Letter from Paul F. Phifer, Assistant Regional Director, Ecological Services, FWS, to Michelle Morin, Chief, Environmental Branch for Renewable Energy, BOEM (Aug. 31, 2017) ("2d Phifer Ltr.")) at 2 (internal quotation marks omitted).  The plaintiffs now seek fees on their first and second ESA claims against the FWS (collectively, the "ESA claims against the FWS").  See Pls.' Mem. at 27–28.

### 2.    The Plaintiffs' ESA Claim Against the NMFS

On March 14, 2014, the Court "grant[ed] summary judgment to the plaintiffs on their claims that the NMFS violated the ESA by failing to issue an incidental take statement for the

take of North American right whales" (the "ESA claim against the NMFS") and "remanded [the claim] to the NMFS for it to formulate and issue an incidental take statement in accordance with the Court's [March 14, 2014] Memorandum Opinion." Order at 2–3 (Mar. 14, 2014), ECF No. 370 (capitalization removed). On remand, the NMFS prepared an amended incidental take statement, see generally 1st Remand Not., Ex. 2 (Incidental Take Statement – Amended May 21, 2014), "indicat[ing] that [the NMFS] d[id] not anticipate any incidental take of North Atlantic right whales, fin whales[,] and humpback whales and that the amount or extent of incidental take [was] set at zero," id., Ex. 1 (Letter from John K. Bullard, Regional Administrator, NMFS, to Michelle Morin, Chief, Environmental Branch for Renewable Energy, BOEM (May 21, 2014) ("Bullard Ltr.")) at 1. The plaintiffs now seek fees on their ESA claim against the NMFS. See Pls.' Mem. at 25–26.

### 3.     The Alliance's NEPA Claim Against the BOEM

On March 14, 2014, the Court rejected the Alliance's "argu[ment] that the BOEM violated the Shelf Lands Act by approving Cape Wind's Construction and Operations Plan without first receiving certain geotechnical and geophysical studies from Cape Wind" (the "NEPA claim against the BOEM") and granted summary judgment to the federal defendants on this claim. Pub. Emps. for Envtl. Responsibility, 25 F. Supp. 3d at 105–06. Following the completion of the initial remand proceedings by the FWS and the NMFS, the Court entered a final judgment against the Alliance on its NEPA claim against the BOEM, cf. Judgment at 3 (Dec. 15, 2014) (denying summary judgment to the plaintiffs on all claims except for the plaintiffs' first ESA claim against the FWS and the ESA claim against the NMFS). On appeal, the Alliance "argue[d] that the [BOEM] violated the [NEPA] by relying on inadequate geophysical and geotechnical surveys." Pub. Emps. for Envtl. Responsibility, 827 F.3d at 1081

(citation and internal quotation marks omitted).  The Circuit concluded that the BOEM violated the NEPA, see id. at 1083, but explained that "that does not necessary mean that the [Cape Wind] project must be halted or that Cape Wind must redo the regulatory approval process."  Id. at 1083–84.  The Circuit "vacat[ed] the impact statement and [ ] require[ed] the [BOEM] to supplement it with geological surveys before Cape Wind may begin construction," but declined to "vacate Cape Wind's release or other regulatory approvals based on this NEPA violation."  Id. at 1084.  On remand to this Court from the Circuit, the Court "remanded [the BOEM's environmental impact statement] to [the] BOEM to take appropriate actions consistent with the Circuit's [o]pinion."  Order at 3 (Oct. 27, 2016), ECF No. 431 (capitalization removed).

On remand from this Court, the BOEM issued a supplemental environmental impact statement, which incorporated a "careful and thorough analysis of the seafloor and its ability to support wind turbine generators," 3d Remand Not., Ex. 1 (Record of Decision, Cape Wind Energy Project, Horseshoe Shoal, Nantucket Sound ("BOEM Record of Decision")) at 1, as well as a record of decision "affirm[ing] [the] BOEM's issuance of the existing lease," based on the "careful and thorough analysis" contained in the BOEM's supplemental environmental impact statement," id., Ex. 1 (BOEM Record of Decision) at 1.  The Alliance now seeks attorneys' fees "in connection with its NEPA victory in the [Circuit]."  Pls.' Mem. at 28.

## II.     STANDARDS OF REVIEW

### A.     Motion for Attorneys' Fees Pursuant to the ESA

The ESA provides that the Court may "award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the [C]ourt determines such an award is appropriate."  16 U.S.C. § 1540(g)(4).  The appropriateness of attorney fee awards in citizen suits brought under the ESA and other "appropriate" fee-shifting statutes is measured by whether

a party "achiev[ed] some success, even if not major success." Ruckelshaus v. Sierra Club, 463 U.S. 680, 688 (1983); see also Sierra Club v. Envtl. Prot. Agency, 322 F.3d 718, 727 (D.C. Cir. 2003) (awarding fees where the "[p]etitioners unquestionably received some of the relief they sought"). Hours expended on unsuccessful claims are not compensable, to the extent that they are unrelated to the plaintiff's successful claims. See Hensley v. Eckerhart, 461 U.S. 424, 435 (1983); Sierra Club v. Envtl. Prot. Agency, 769 F.2d 796, 801 (D.C. Cir. 1985).

**B.      Motion for Attorneys' Fees Pursuant to the EAJA**

The EAJA provides, in relevant part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (2018).[8] Thus, to award attorneys' fees under the EAJA, the Court must find that "(1) [the plaintiff] is the prevailing party; (2) [the plaintiff] has incurred [reasonable] fees or expenses; (3) the position of the United States in the action was not substantially justified; and (4) no special circumstances make an award of fees unjust." Brooks v. Berryhill, Civ. Action No. 15-00436 (CKK/GMH), 2019 WL 120767, at *3 (D.D.C. Jan. 7, 2019). Once the plaintiff establishes that it is the prevailing party under the EAJA, the government has the burden of showing that its position was "substantially justified" or that special circumstances make the award unjust. See Taucher v. Brown-Hruska, 396 F.3d 1168, 1173 (D.C. Cir. 2005). Finally, if the Court concludes that an award of attorneys' fees and costs is warranted, it is incumbent upon the plaintiff to establish that the fees and costs it is seeking are

---

[8] In order to be eligible to receive an award of attorneys' fees and other expenses under the EAJA, a prevailing party must also file its application seeking an award of attorneys' fees "within thirty days of a final judgment," 28 U.S.C. § 2412(d)(1)(B), and meet the net worth requirements of the EAJA, see id. § 2412(d)(2)(B).

reasonable.  See <u>Role Models Am., Inc. v. Brownlee</u>, 353 F.3d 962, 969–70 (D.C. Cir. 2004)

("[C]ourts properly have required prevailing attorneys to justify the reasonableness of the

requested rate or rates." (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984)).

### III.    ANALYSIS

As stated above, the plaintiffs seek attorneys' fees on three sets of claims.  First, the

plaintiffs seek attorneys' fees on their ESA claims against the FWS pursuant to the citizen-suit

provision of the ESA, or alternatively, pursuant to the EAJA.  See Pls.' Mem. at 27–28.  Second,

they seek attorneys' fees on their ESA claim against the NMFS pursuant to the citizen-suit

provision of the ESA, or alternatively, pursuant to the EAJA.  See <u>id.</u> at 26–28.  Finally, the

Alliance seeks attorneys' fees on its NEPA claim against the BOEM pursuant to the EAJA.  <u>See</u>

<u>id.</u> at 28–32.  The Court will separately address the plaintiffs' entitlement to attorneys' fees on

their ESA claims and the Alliance's entitlement to attorneys' fees on its NEPA claim.

### A.    The Plaintiffs' ESA Claims

The plaintiffs seek attorneys' fees on their ESA claims pursuant to the ESA, or

alternatively, pursuant to the EAJA.  See <u>id.</u> at 28.  Before determining whether the plaintiffs are

in fact entitled to attorneys' fees on their ESA claims, the Court must first determine whether

their entitlement to fees on these claims should be evaluated under the ESA or EAJA framework.

### 1.    The Applicable Framework

"Because the ESA's citizen[-]suit provision provides an express authorization for

attorney fees in ESA cases, the [C]ourt looks first to the ESA and then to the EAJA in evaluating

[the] plaintiffs' fee request."  <u>Native Fish Soc'y v. Nat'l Marine Fisheries Serv.</u>, No. 3:12-CV-

00431-HA, 2014 WL 7331039, at *1 (D. Or. Dec. 19, 2014).  Relying on subsection (A) of 16

U.S.C. § 1540(g)(1), which authorizes citizen suits pursuant to the ESA, the plaintiffs argue that

"[u]nder the plain terms of the ESA, [ ] the Court has jurisdiction to determine whether an award of fees and costs is appropriate," Pls.' Mem. at 24, because "so long as a plaintiff affords an alleged violator of the ESA with the requisite [sixty]-days' advance notice, any person 'may commence a civil suit' against 'any person . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof,'" id. at 23 (quoting 16 U.S.C. § 1540(g)(1)(A)), and the plaintiffs "indisputably gave [the] BOEM [sixty]-days' notice that Section 7 consultations on which [the] BOEM was relying for its ESA compliance in approving the Cape Wind project violated the statute and implementing regulations[,]" id. at 24. Moreover, the plaintiffs argue that they "also commenced [Civil Action No. 10-1067] against [the] BOEM by claiming that it was in violation of Section 7 of the ESA, including because the [b]iological [o]pinions and underlying consultations on which [the] BOEM was relying violated the ESA and implementing regulations." Id. (internal quotation marks omitted). The federal defendants respond that the plaintiffs' "claims against [the] FWS and [the] NMFS challenging those actions could only have been APA 'maladministration claims'[] [and therefore] [ ] could not have been authorized for judicial review under the ESA's citizen[-]suit provision." Fed. Defs.' Opp'n at 12. The Court agrees with the federal defendants that the plaintiffs' EJA claims are properly brought pursuant to the EAJA, rather than the ESA.

Subsection (A) of 16 U.S.C. § 1540(g)(1) provides, in relevant part, that

> any person[9] may commence a civil suit on his own behalf . . . to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof.

---

9 The EJA defines "person" as "an individual, corporation, partnership, trust, association, or any other private entity; or any officer, employee, agent, department, or instrumentality of the Federal Government, of any State, municipality, or political subdivision of a State, or of any foreign government; any State, municipality, or political subdivision of a State; or any other entity subject to the jurisdiction of the United States." 16 U.S.C. § 1532(13).

16 U.S.C. § 1540(g)(1)(A) (2018).  The Circuit has explained that

> [s]ubsection (A) "is a means by which private parties may enforce the substantive
> provisions of the ESA against regulated parties—both private entities and
> [g]overnment agencies, but is not an alternative avenue for judicial review of the
> Secretary's implementation of the statute[]" . . . . [S]ubsection (A)'s "reference to
> any "violation" of the ESA cannot be interpreted to include the Secretary's
> maladministration of the [Act]," and [ ] such maladministration "claims are not
> subject to judicial review" under subsection (A).

Conservation Force v. Salazar, 699 F.3d 538, 541 (D.C. Cir. 2012) (fifth alteration in original)

(quoting Bennett v. Spear, 520 U.S. 154, 173 (1997)).

The plaintiffs' reliance on subsection (A) of 16 U.S.C. § 1540(g)(1) as support for their

claim for attorneys' fees on their ESA claims pursuant to the citizen-suit provision of the ESA,

see Pls.' Mem. at 23 (citing 16 U.S.C. § 1540(g)(1)(A)), is misplaced.  Their ESA claims against

the federal defendants are brought pursuant to § 1536 of the ESA, see Pls.' Compl. ¶¶ 97–100,

102 (alleging violations of § 1536(a), (b), and (d)); Pls.' Supp. Compl. ¶¶ 20–21 (alleging

violations of § 1536(a) and (b)), and the Supreme Court has held that § 1536 claims are

maladministration claims that are not authorized under the ESA's citizen-suit provision, see

Bennett, 520 U.S. at 174 ("[T]he ESA[] . . . does not support the[] [petitioners'] claims based

upon the Secretary's alleged failure to comply with § 1536."); see also Franks v. Salazar, 816 F.

Supp. 2d 49, 58 (D.D.C. 2011) (holding that the plaintiffs' claims alleging violations of §§ 1536

and 1537 "cannot be enforced via the ESA's citizen-suit provision because they allege merely a

'maladministration' of the ESA").  Accordingly, the plaintiffs' § 1536 claims are not authorized

under subsection (A) of 16 U.S.C. § 1540(g)(1).[10]  Therefore, the plaintiffs may not recover

---

[10] Nor are the plaintiffs' ESA claims authorized under the other subsections of 16 U.S.C. § 1540(g)(1).  Subsection
(B) is not applicable because the plaintiffs did not seek to "compel the Secretary to apply, pursuant to section
1535(g)(2)(B)(ii) of th[e] [ESA], the prohibitions set forth in or authorized pursuant to section 1533d(d) or
1538(a)(1)(B) of th[e] [ESA] with respect to the taking of any resident endangered species or threatened species
with any State."  16 U.S.C. § 1540(g)(1)(B); see Pls.' Compl. ¶¶ 97–103 (not seeking to compel action by the
 federal defendants pursuant to § 1535 of the ESA); Pls.' Supp. Compl. ¶¶ 19–22 (same); Alliance Compl.

(continued . . . )

attorneys' fees on their ESA claims pursuant to the ESA.  See Native Fish Soc'y, 2014 WL 7331039, at *1 ("Because the fee shifting provision[] of the ESA . . . constitute[s] partial waiver of sovereign immunity, the waiver[] must be construed in favor of federal defendants and against an award of fees when such an award is not clearly authorized by the statute[]." (citing Ardestani v. Immigration & Nationality Serv., 502 U.S. 129, 137 (1991)).  The plaintiffs' § 1536 claims are, however, reviewable under the APA, see Bennett, 520 U.S. at 179 (finding that the "[p]etitioners' § 1533 claim is reviewable under the ESA's citizen-suit provision, and [the] petitioners' [ ] [§ 1536] claims are reviewable under the APA"), and therefore the Court will evaluate whether the plaintiffs are entitled to attorneys' fees under the EAJA, see Native Fish Soc'y, 2014 WL 7331039, at *1 ("[The] EAJA's fee provisions are subordinated to those of the ESA and only if a fee is not authorized under the ESA does the [C]ourt determine whether the fee would be authorized pursuant to [the] EAJA.").

**2.      The Plaintiffs' Entitlement to Fees Under the EAJA**

Having concluded that the plaintiffs' request for attorneys' fees on their ESA claims is not authorized by the ESA, the Court next turns to whether the plaintiffs are entitled to attorneys' fees on their ESA claims under the EAJA framework.

---

(. . . continued)

¶¶ 151–93 (not alleging violations of the ESA).  And, subsection (C) is not applicable because"[s]ubsection (C)[] . . . expressly authorizes suit against the Secretary, but only to compel him to perform a nondiscretionary duty under § 1533," Conservation Force, 699 F.3d at 541, and the plaintiffs did not allege that the federal defendants violated § 1533 of the ESA, see Pls.' Compl. ¶¶ 97–103 (not alleging violations of § 1533 of the ESA); Pls.' Supp. Compl. ¶¶ 19–22 (same); Alliance Compl. ¶¶ 151–93 (not alleging violations of the ESA); see also Franks, 816 F. Supp. 2d at 58 ("Because [the] plaintiffs do not allege that the [FWS] [ ] failed to perform any non-discretionary duty under section 1533, they are not eligible for judicial review under subsection (C).").

### a.    Whether the Plaintiffs Were the Prevailing Parties

In determining whether the plaintiffs are entitled to attorneys' fees on their ESA claims, the Court must first determine whether they were prevailing parties within the meaning of the EAJA.  See Brooks, 2019 WL 120767, at *3.

> In Thomas v. National Science Foundation, the [District of Columbia] Circuit distilled a three-part test . . . for an EAJA prevailing party analysis.  First, there must be a "court-ordered change in the legal relationship between the plaintiff and the defendant."  Second, the judgment must be in favor of the party seeking the fees.  Third, the judicial pronouncement must be accompanied by "judicial relief."

Ctr. for Food Safety v. Burwell, 126 F. Supp. 3d 114, 120 (D.D.C. 2015) (citations omitted) (quoting Thomas v. Nat'l Sci. Found., 330 F.3d 486, 492–93 (D.C. Cir. 2003)).

Here, the first and second prongs of the prevailing party test adopted in Thomas are clearly satisfied with respect to the plaintiffs' ESA claims.  As to the first prong of the Thomas prevailing party test, the Court's initial remand of the plaintiffs' first ESA claim against the FWS and their ESA claim against the NMFS, and the Court's second remand of the plaintiffs' second ESA claim against the FWS again in response to the Circuit's decision, represent a "court-ordered change in the legal relationship between [the parties]," id., because "the Court's remand [Order[s] required action[s] by the [FWS and the NMFS] that [the agencies] otherwise believed that [they] had no duty to perform," Nw. Coal. for Alternatives to Pesticides v. Envtl. Prot. Agency, 421 F. Supp. 2d 123, 128 (D.D.C. 2006); see Kean for Congress Comm. v. Fed. Election Comm'n, No. Civ. A. 04-0007 JDB, 2006 WL 89830, at *2 (D.D.C. Jan. 13, 2006) ("[T]he Court's remand order caused a change in the legal relationship between the parties because it required [the] [agency] to do something it otherwise would not have been under an obligation to do—reconsider the plaintiff's administrative complaint . . . within [sixty] days of the Court's order.").  And, as to the second prong of the Thomas prevailing party test, the

Court's entry of partial summary judgment for the plaintiffs on their first ESA claim against the FWS and their ESA claim against the NMFS and the Circuit's reversal of this Court's dismissal of the plaintiffs' second ESA claim against the FWS were judgments "in favor of the party seeking the fees." Ctr. for Food Safety, 126 F. Supp. 3d at 120.

However, the third prong of the Thomas prevailing party test is not so easily resolved in the plaintiffs' favor. The Circuit has explained that

> [w]hen a court retains jurisdiction, the civil action remains ongoing, and any fee motion must await final judgment. In such a case, the remand order is only an interim victory; final judgment will not be entered until proceedings on remand conclude, and the determination of prevailing-party status properly awaits the sequel (e.g., an outcome at the agency favorable to the plaintiff, as in Sullivan[v. Hudson], or continued dispute in court. By contrast, when a court remands a case based on agency error without retaining jurisdiction, the case is terminated and the petitioner becomes a prevailing party without regard to the outcome on remand (which can be challenged by way of a new petition . . . ).

SecurityPoint Holdings, Inc. v. Transp. Sec. Admin., 836 F.3d 32, 38 (D.C. Cir. 2016) (citation omitted) (citing Sullivan v. Hudson, 490 U.S. 877, 881–82 (1989)). If a plaintiff does not obtain a favorable result at the agency level,

> [t]he relevant case law indicates that a plaintiff can be considered a prevailing party regardless of the outcome on remand in two situations . . . . First, a remand order may be sufficient where the terms of remand are such that a substantive victory will obviously follow. Second, a remand order may be sufficient and the end results immaterial where the complaint only sought to correct some procedural error in the agency's decision making process.

New Life Evangelistic Ctr., Inc. v. Sebelius, 847 F. Supp. 2d 50, 55 (D.D.C. 2012).

Here, the Court retained jurisdiction pending completion of the initial remand proceedings, see Judgment at 1 (Dec. 15, 2014) (entering judgment after the initial remand proceedings conducted by the FWS and the NMFS were completed), and also of the second remand proceedings, see Order at 3 (Oct. 14, 2016), ECF No. 426 ("retain[ing] jurisdiction over this case pending the action of [the FWS,] to whom the case [was] remanded"), and therefore the

Court's "remand [O]rder[s] [were] only [ ] interim victor[ies]" for the plaintiffs on their ESA

claims against FWS and the NMFS, <u>SecurityPoint Holdings, Inc.</u>, 836 F.3d at 38.  And, the

plaintiffs did not achieve "outcome[s] . . . favorable to the[m]" on their ESA claims during either

the initial or second remand proceedings.  <u>Id.</u>  Regarding the initial remand,  "[a]lthough the

Court's [ ] summary judgment ruling found [two] substantive errors in [the FWS's and the

NMFS's] reasoning, the [initial] remand ultimately failed to supply any material relief to [the

plaintiffs]" because the agencies "w[ere] free to 'reach the exact same conclusion on remand, so

long as [they] [sufficiently] articulate[d] [their] reasons for doing so.'"  <u>New Life Evangelistic</u>

<u>Ctr., Inc</u>, 847 F. Supp. 2d at 55 (quoting <u>Roberts v. Harvey</u>, 468 F. Supp. 2d 147, 150 (D.D.C.

2007)); <u>see</u> Order at 3 (Nov. 18, 2014), ECF No. 415 ("instruct[ing] the FWS on remand to make

an independent determination about whether the feathering operational adjustment was a

reasonable and prudent measure, because [w]ithout any indication [in the administrative record]

that the FWS in fact made an independent determination about whether the adjustment was

appropriate, the Court c[ould ]not infer that such a determination ultimately factored into the

FWS's decision" (second and third alterations in original) (citation and internal quotation marks

omitted)); <u>id.</u> at 3–4 ("instruct[ing] the NMFS on remand to issue an incidental take statement for

the take of right whales along with its [2010] biological opinion, despite the fact that the

biological opinion stated that the Cape Wind project was not likely to adversely affect right

whales, as the NMFS did not state that the incidental take would not occur or was not

anticipated" (citation and internal quotation marks omitted)).  Indeed, both the FWS and the

NMFS reached the same conclusions they had earlier reached on remand.  <u>See</u> 1st Remand Not.,

Ex. 1 (Bullard Ltr.) at 1 (NMFS setting the incidental take of right whales at zero); <u>id.</u>, Ex. 5 (1st

Phifer Ltr.) at 2 (FWS not changing its conclusion on remand).  And, regarding the second

remand, although the Circuit reversed this Court's dismissal of the plaintiffs' second ESA claim against the FWS, this Court's second remand to the FWS in response to the Circuit's decision, like the Court's initial remand to the FWS and the NMFS, "ultimately failed to supply any material relief to [the plaintiffs]," New Life Evangelistic Ctr., Inc., 847 F. Supp. 2d at 55, as the FWS reached the same conclusion on remand, see 2d Remand Not., Ex. 1 (2d Phifer Ltr.) at 2 (FWS not changing its conclusion).

Because the plaintiffs did not achieve favorable outcomes at the agency level, the Court must therefore assess whether either of the "two situations" that can render a plaintiff "a prevailing party regardless of the outcome on remand" applies to either of the remands in this case. New Life Evangelistic Ctr., 847 F. Supp. 2d at 55. The Court first addresses whether either of the "two situations" apply to its initial remand of the plaintiffs' first ESA claim against the FWS and their ESA claim against the to the NMFS. "First, th[is] Court's remand [O]rder reached only [two] discrete issues, and a victory for [the plaintiffs] was neither obvious nor required by the Court's remand Order," id., as evidenced by the remand's "ultimate[] fail[ure] to supply any material relief" to the plaintiffs, id. at 54. "Second, the Complaint [containing the first ESA claim against the FWS and the ESA claim against the NMFS] does not seek relief from some purely procedural flaw in the agenc[ies'] review process which could be remedied entirely by remand itself." Id. at 55. Indeed, the "[initial] remand [O]rder [did not] provide the entirety of the relief sought" by the plaintiffs, id., because, rather than specifically requesting remand to the agencies to cure any procedural deficiencies, the plaintiffs requested "a declar[ation] that the [federal] defendants violated the ESA . . . [,]" and that the Court "vacate and enjoin [the] [federal] [d]efendants' authorization of Cape Wind Associates' proposal to construct and operate a wind power facility in federal waters[,]" Pls.' Compl. ¶ 111; cf. Envtl. Def. Fund, Inc. v.

Reilly, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (concluding that the plaintiff was a prevailing party upon obtaining a remand order to the agency, where the complaint only sought a remand order requiring the agency to participate in the notice and comment process, because "no further proceedings were necessary in order for the plaintiff to have obtained all the relief that it sought or that was available to it" (emphasis added)). Accordingly, because the plaintiffs did not achieve a favorable outcome on remand at the agency level with respect to their first ESA claim against the FWS and their ESA claim against the NMFS, and neither of the "two situations" that render a plaintiff a prevailing party "regardless of the outcome on remand" applies to the initial remand, the Court concludes that the plaintiffs are not prevailing parties with respect to their first ESA claim against the FWS or their ESA claim against the NMFS. New Life Evangelistic Ctr., Inc., 847 F. Supp. 2d at 55,

The Court next turns to whether either of these "two situations" apply to the Court's second remand of the plaintiffs' second ESA claim against the FWS. As with the Court's initial remand to the FWS and the NMFS, the Court's second remand of the plaintiffs' second ESA claim against the FWS "reached only [one] discrete issue[], and a victory for [the plaintiffs] was neither obvious nor required by the Court's remand Order," id., as evidenced by the remand's "ultimate[] fail[ure] to supply any material relief" to the plaintiffs, id. at 54; see 2d Remand Not., Ex. 1 (2d Phifer Ltr.) at 2 (FWS confirming its prior conclusion). However, unlike the Complaint containing the plaintiffs' first ESA claim against the FWS and their ESA claim against the NMFS, the Supplemental Complaint containing the plaintiffs' second ESA claim against the FWS "only sought to correct some procedural error in the agency's decision making process," New Life Evangelistic Ctr., Inc., 847 F. Supp. 2d at 55; see Pls.' Supp. Compl. at 8 ("request[ing] that the Court enter an Order[] (1) declaring that the FWS and NMFS have

violated the . . . ESA; [and] (2) remanding and vacating the actions on remand") and thus, with

respect to the plaintiffs' second EJA claim, "[the] remand [O]rder was sufficient and the end

results immaterial," New Life Evangelistic Ctr., Inc., 847 F. Supp. 2d at 55, because the

plaintiffs did, in effect "obtain[] all of the relief that [they] sought or that was available to

[them]" with respect to this claim, Reilly, 1 F.3d at 1258. Accordingly, as to their second ESA

claim, although the plaintiffs did not achieve a favorable outcome at the agency level, because

the Supplemental Complaint "only sought to correct some procedural error in the agency's

decision making process," the Court concludes that the plaintiffs are prevailing parties with

respect to their second ESA claim against the FWS. New Life Evangelistic Ctr., Inc., 847 F.

Supp. 2d at 55.

Accordingly, the Court concludes that the plaintiffs are not prevailing parties with respect

to their first ESA claim against the FWS or their ESA claim against the NMFS, but are

prevailing parties with respect to their second ESA claim against the FWS.

### b.      Whether the FWS's Position was Substantially Justified

As to their second ESA claim against the FWS,[11] the plaintiffs argue that the "[federal]

[d]efendants have not met their burden to demonstrate substantial justification" because

> [t]he [District of Columbia] Circuit plainly did not regard it as a reasonable course
> of action for the FWS to reopen the decision making record by considering new
> information bearing on the practicability of a measure for minimizing the take of
> endangered and threatened species, and without any explanation, ignor[ing] [the]
> [plaintiffs'] submissions that argued feathering would have, at most, a miniscule
> economic impact on the [Cape Wind] project, and that the government has
> previously required other wind projects to make comparable operational
> adjustments to minimize [harm to] protected species.

---

[11] Because the Court concludes that the plaintiffs are not prevailing parties as to their first ESA claim against the
FWS or their ESA claim against the NMFS, the Court need not address whether the agencies' actions as to those
claims were substantially justified.

Pls.' Reply at 24 (fifth and ninth alterations in original) (internal quotation marks omitted).[12]

The federal defendants respond that "[t]he fact that FWS conducted the remand ordered by this Court without considering [the plaintiffs'] submission [ ] does not disprove [the] FWS'[s] substantial justification" because "the remand to [the] FWS was not based on a finding that the [incidental take statement] lacked substantial evidence or was substantially invalid" and the "FWS'[s] action did not suffer from the defects common to positions that are not substantially justified." Fed. Defs.' Opp'n at 26 (internal quotation marks omitted).

> The EAJA instructs a court to award attorneys' fees unless the court finds the position of the United States was substantially justified or that special circumstances make an award unjust. The [g]overnment has the burden of proving that its position, including both the underlying agency action and the arguments defending that action in court, was substantially justified within the meaning of the [EAJA].

Calloway v. Brownlee, 400 F. Supp. 2d 52, 55 (D.D.C. 2005) (Walton, J.) (citation and internal quotation marks omitted). "A position is 'substantially justified' if it has 'a reasonable basis in law and fact.'" Animal Legal Def. Fund v. Perdue, 292 F. Supp. 3d 315, 318 (D.D.C. 2018) (quoting Pierce v. Underwood, 487 U.S. 552, 555 n.2 (1988)).

"[W]hether agency action invalidated as arbitrary and capricious might nevertheless have been substantially justified depends on what precisely the court meant by "arbitrary and capricious." F.J. Vollmer Co. v. Magaw, 102 F.3d 591, 595 (D.C. Cir. 1996). Indeed, "a determination that an agency acted arbitrarily and capriciously because it failed to provide an adequate explanation or failed to consider some relevant factor in reaching a decision 'may not warrant a finding that [the] agency's action lacked substantial justification[,]'" id. (alteration in original) (quoting Wilkett v. Interstate Comm. Comm'n, 844 F.2d 867, 871 (D.C. Cir. 1988));

---

[12] The plaintiffs' argument regarding substantial justification is confined to their assertion that the FWS's underlying action was not substantially justified; they do not argue that the federal defendants' litigation position was not substantially justified. See generally Pls.' Mem.

see Fed. Election Comm'n v. Rose, 806 F.2d 1081, 1088 (D.C. Cir. 1986) ("Concluding that a factor is 'relevant,' like finding an explanation 'inadequate,' sometimes may reflect a judgment call about which reasonable grounds for disagreement exist. Thus, in a particular setting, an agency's failure to consider a relevant factor may be understandable, even though the failure contravenes the APA standard of avoiding 'arbitrary and capricious conduct.'"), and "agency neglect of a relevant factor in reaching its decision does not invariably doom the decision to the ranks of unreasonableness, as is clear from the oft-stated principle that an agency may lawfully reach the same conclusion after taking  the omitted factor into account[,]" Rose, 806 F.2d at 1088.  In determining whether the agency was substantially justified, "[t]he judgment is whether the [g]overnment's actions were slightly more than reasonable."  Id. at 1090.

Here, although the Circuit did conclude that "the [FWS's] decision to disregard [the] plaintiffs' submission was arbitrary and capricious," Pub. Emps. for Envtl. Responsibility, 827 F.3d at 1090, this Court concludes that the FWS's failure to consider the plaintiffs' scientific and economic data was "understandable, even though the failure contravene[d] the APA standard of avoiding 'arbitrary and capricious conduct,'" Rose, 806 F.2d at 1088, because the Court's initial remand Order did not clearly reopen the record, see Pub. Emps. for Envtl. Responsibility, 827 F.3d at 1090 ("[The] [p]laintiffs may be correct that the that the district court's remand order required the [FWS] to 'make' a new independent determination, and therefore reopened the record.  On the other hand, the [FWS] may be correct that the [C]ourt's remand order required the [FWS] to only 'clarify' that it made an independent determination in 2008.  We need not decide who is right."), see also Order at 2 (Oct. 27, 2016), ECF No. 431 ("order[ing] that the November 21, 2008 [i]ncidental [t]ake [s]tatement is remanded to [the] FWS to take appropriate actions consistent with the Circuit's opinion" (capitalization removed)), and was not the type of

arbitrary and capricious conduct that "the [g]overnment in fees litigation may well suffer considerably greater difficulty in demonstrating . . . [was] nonetheless 'substantially justified," Rose, 806 F.2d at 1089 (providing, as examples, "an agency's unjustifiably disparate treatment of two similarly situated parties" and "an agency's failure to apply a rule in a situation to which the rule obviously pertains").  "In fact, [consistent with what this Court noted in another fee dispute case under the EAJA,] even this Court had sided with the agency prior to the Circuit's remand." Tripoli Rocketry Ass'n v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 698 F. Supp. 2d 168, 176 (D.D.C. 2010) (Walton, J.); see Order at 6 (Nov. 18, 2014), ECF No. 415 (dismissing the plaintiffs' Supplemental Complaint).  Accordingly, the Court concludes that "[a]lthough the [FWS's] position was determined by the Circuit not to be in compliance with the APA, . . . the [federal defendants] had a good-faith basis for maintaining [their] position prior to the Circuit['s] [ ] ruling," Tripoli Rocketry Ass'n, 698 F. Supp. 2d at 176, and "[t]herefore, the Court finds the pre-remand actions of the [FWS] [prior to the Circuit's remand] to be substantially justified and will not award attorney[s'] fees or costs to the plaintiffs under the EAJA" with respect to the plaintiffs' second ESA claim against the FWS, id. at 177.

Accordingly, because the plaintiffs are not the prevailing parties as to their first ESA claim against the FWS and their ESA claim against the NMFS, the Court concludes that the plaintiffs are not entitled to attorneys' fees on their first ESA claim against the FWS and their ESA claim against the NMFS pursuant to the EAJA.  And, because the federal defendants have demonstrated that the FWS's position was substantially justified as to the plaintiffs' second ESA claim against the FWS, the Court concludes that the plaintiffs are not entitled to attorneys' fees on their second ESA claim against the FWS pursuant to the EAJA.

**B.      The Alliance's Entitlement to Fees**

The plaintiffs argue that the Alliance is entitled to attorneys' fees on its NEPA claim

against the BOEM pursuant to the EAJA.  See Pls.' Mem. at 28–33.  The federal defendants

respond that the Alliance is not entitled to attorney's fees on this claim because "[a]t every level,

[the] BOEM's conduct and litigating position were reasonable, as evidenced by this Court's

Order upholding the agency's actions entirely."  Fed. Defs.' Opp'n at 36.  As a preliminary

matter, the Court notes that the defendants do not respond to the plaintiffs' argument that "there

can be no serious dispute that the Alliance is a 'prevailing party' for EAJA purposes[,]" Pls.'

Mem. at 29; see Fed. Defs' Opp'n at 36–45.  Therefore, the Court will treat the plaintiffs'

argument that they are the prevailing parties with respect to the Alliance's NEPA claim against

the BOEM as conceded, see Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec., 892

F.3d 332, 345 (D.C. Cir. 2018) ("In the context of non-dispositive motions, we have affirmed

district court decisions that treated as conceded an issue left entirely unaddressed by the [non-

movant] in a timely filed response."), and proceed to the second step of its analysis of whether

the Alliance is entitled to attorneys' fees under the EAJA.

**1.      Whether the BOEM's Position was Substantially Justified**

The Court first considers whether the BOEM's position was substantially justified, the

second step of the entitlement to fees analysis under the EAJA.  See Brooks, 2019 WL 120767,

at *3.  The plaintiffs argue that the "BOEM's [p]osition [w]as [n]ot [s]ubstantially [j]ustified."

Pls.' Mem. at 32.  The federal defendants respond that the "BOEM's underlying action and

litigation position . . . w[ere] substantially justified" because the plaintiffs' "failure on every

claim but one [ ] [on their appeal to] the Circuit . . . evidences the reasonableness of [the]

BOEM's overall position" and that "even on the single of all the many issues [the plaintiffs] . . .

[prevailed on in the Circuit]—[the] BOEM's consideration of impacts to the subsurface environment—[the] BOEM's underlying conduct and litigation position was supported by both fact and law." Fed. Defs.' Opp'n at 36.

As a preliminary matter, the Court agrees with the plaintiffs that the federal defendants' "refer[ence] to [the] BOEM's position on the [Cape Wind] project 'as a whole' or to [the] NEPA issues other than the adequacy of [the] BOEM's analysis of the seafloor gets [the federal] [d]efendants nowhere." Pls.' Reply at 13 (citation omitted). Regarding whether the government's position was substantially justified, the Circuit has explained that "such a 'holistic' approach to the government's position is contrary to [the] EAJA, and [ ] the relevant 'position' of the government is that which corresponds to the claim or aspect of the case on which the private party prevailed." Jacobs v. Shiffer, 204 F.3d 259, 264 (D.C. Cir. 2000) (citation omitted) (citing Air Transp. Ass'n of Can. v. Fed. Aviation Admin., 156 F.3d 1329, 1332 (D.C. Cir. 1998)). Accordingly, the relevant inquiry is whether the BOEM's underlying actions and litigation position with respect to the Alliance's NEPA claim against the BOEM were substantially justified, not whether the BOEM's underlying actions and litigation position as a whole were substantially justified.

As to the Alliance's NEPA claim against the BOEM, the federal defendants argue that the "BOEM was both factually and legally 'substantially justified' to argue that it indeed had considered the subsurface environment and taken a 'hard look' at the geological and geophysical environment in Nantucket Sound," Fed. Defs.' Opp'n at 39, because "extensive seabed surveys were completed between 2001 and 2005 and disclosed in the [environmental impact statement]," and that

> Richard Clingan, a BOEM geologist who called for more detailed data before [the] BOEM should consider "issuing a permit" for the [Cape Wind] [p]roject . . .

acknowledged that the data sets available for the [environmental impact statement] constituted "an informative reconnaissance-level survey of the project area . . . [,]"

id. at 39–40 (internal quotation marks omitted) (emphasis added).

The Court cannot conclude, based on this argument, that the federal defendants have sustained their burden to demonstrate that the BOEM's underlying actions with respect to the Alliance's NEPA claim against the BOEM was substantially justified. At the outset, the Court is troubled by the "[federal] [d]efendants' "highly selective exegesis of [ ] [Clingan's] full quotation." Pls.' Reply at 16. As the plaintiffs correctly point out, the federal defendants made this exact argument—indeed, using the very same excerpted quotation—on appeal, and the Circuit squarely rejected it, noting that "[t]he [BOEM's] quotation [was] a bit misleading" because "Clingan's full email sa[id] that '[a]t first impression, [Cape Wind] conducted an informative reconnaissance-level of the project area, but '[u]nfortunately, [Cape Wind] has not acquired sufficient geophysical data' on Nantucket Sound." Pub. Emps. for Envtl. Responsibility, 827 F.3d at 1083 n.4 (second emphasis added) (third, fourth, and fifth alterations in original). Moreover, it was the BOEM's very "rel[iance] on data so roundly criticized by its own experts," including Clingan, that caused the Circuit to conclude that the BOEM had not fulfilled its NEPA obligations. Id. at 1083. Accordingly, the Court concludes that the BOEM's underlying actions in regard to the Alliance's NEPA claim against the BOEM were not substantially justified.[13]

## 2.    Whether Special Circumstances Make an Award of Fees Unjust

Having concluded that the BOEM's underlying actions were not substantially justified, the Court next turns to whether the federal defendants have identified special circumstances that

---

[13] Because the Court concludes that the BOEM's underlying actions in regard to the Alliance's NEPA claim against the BOEM were not substantially justified, the Court need not address whether the BOEM's litigation position in regard to the Alliance's NEPA claim against the BOEM was also not substantially justified.

would render an award of attorneys' fees unjust. The plaintiffs argue that "[t]here is no basis in

law or fact for denying the[] [Alliance] a fee award to which [it] [is] otherwise entitled." Pls.'

Reply at 25 n.14. The federal defendants respond that "the Alliance . . . used a litany of claims

to beset the [Cape Wind] [p]roject with some eight years of litigation that was contentious,

protracted—and ultimately fruitless," and that "[g]iven that [the Alliance] ha[s] alluded to a

strategy of delay to this Court and claimed victory regardless of the merits of [its] claims, a fee

award is unjust." Fed. Defs.' Opp'n at 45.

Although the "EAJA does not define the term 'special circumstances' or provide

examples of the circumstances that would make a fee award unjust[,]" Brooks, 2019 WL

120767, at *4,

> [c]ourts have generally found that the statutory language expresses a
> congressional directive for courts to apply traditional equitable principles in
> determining whether a party should receive a fee award under [the] EAJA. In
> determining the circumstances under which th[e] [special circumstances]
> exception applies, the scope of a district court's equitable powers is broad, and the
> equitable doctrine of unclean hands pervades the jurisprudence of special
> circumstances under [the] EAJA.

Id. (citations and internal quotation marks omitted).

The federal defendants appear to allege, although not explicitly, unclean hands on the

part of the Alliance, based on the Alliance's purported attempt to "delay" the Cape Wind project

by suing to impede construction of the Cape Wind project. See Fed. Defs.' Opp'n at 44. Even if

this assessment is accurate, an

> unclean hands claim requires of a plaintiff fair dealing and righteous conduct with
> references to matters concerning which they seek relief. While bringing a lawsuit
> brings the contested issues before the [C]ourt, the act of bringing suit is not, itself,
> the matter concerning which a plaintiff seeks relief. Thus, the Court must focus
> on the alleged inequitable conduct in the gaining or the use of the right being
> contested, not alleged inequitable conduct in the bringing of the lawsuit.

<u>Sears, Roebuck & Co. v. Sears plc</u>, 744 F. Supp. 1297, 1310 (D. Del. 1990) (holding that the defendant "c[ould ]not maintain a claim of unclean hands based on [the plaintiff's] alleged intent in bringing th[e] action as based on [the plaintiff's] alleged litigation strategy"). Therefore, the Court concludes that the federal defendants have not satisfied their burden to demonstrate that special circumstances would render an award of attorneys' fees unjust.

Accordingly, because the plaintiffs have demonstrated that the Alliance was a prevailing party in this litigation as to its NEPA claim against the BOEM, and because the federal defendants have not demonstrated that their challenged conduct as to this claim was substantially justified or that special circumstances exist that would make a fee award unjust, the Court concludes that the Alliance is entitled to attorneys' fees as to its NEPA claim against the BOEM under the EAJA.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants in part and denies the plaintiffs' motion for attorneys' fees. Specifically, the Court grants the motion to the extent that it seeks a finding that the Alliance is entitled to an award of attorneys' fees under the EAJA regarding its NEPA claim against the BOEM. The Court denies the motion in all other respects.[14]

**SO ORDERED** this 2nd day of December, 2019.


REGGIE B. WALTON
United States District Judge

---

[14] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.